UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROUMMEL INGRAM,

                Petitioner,                  Case Number: 12-13107
                                                      Honorable David M. Lawson

v.

JOHN PRELESNIK,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

        An Oakland County, Michigan jury convicted petitioner Roummel Ingram of armed robbery, assault with intent to do great bodily harm less than murder, felonious assault, and three counts of possession of a firearm during commission of a felony. He was sentenced to minimum prison terms totaling more than 25 years. Ingram filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his convictions on the grounds that other-acts evidence was improperly admitted, he received ineffective assistance of trial and appellate counsel, a warrantless arrest violated his rights under the Fourth Amendment, and his right to public trial was violated. Warden John Prelesnik filed an answer to the petition contending that all of Ingram's claims are procedurally defaulted, with the exception of a portion of his ineffective assistance of counsel claim, and that all of the claims raised are meritless. The Court finds that the petitioner's claims lack merit. Therefore, the Court will deny the petition.

I.

        The Michigan Court of Appeals accurately summarized the evidence adduced at the petitioner's Oakland County, Michigan circuit court trial as follows:

Defendant's convictions arise out of the July 5, 2005, robbery of the Mug & Jug Wine Shop in Farmington Hills. Co-defendant Shannon McGriff entered the store with defendant while another co-defendant, Kim Thomas, waited in a vehicle at the rear of the store. During the robbery, defendant beat a store employee, Matthew Al-Sheikh, with a gun and threatened to shoot Al-Sheikh if he did not open a safe. Defendant and McGriff took money from a cash register and drawer, but left without opening the safe. Defendant shot Al-Sheikh in the chest before he and McGriff fled out the back door. Defense counsel conceded at trial that defendant committed the armed robbery and the charged felonious assault, but argued that defendant was not guilty of the charged greater offense of assault with intent to commit murder because Al-Sheikh was shot when the gun accidentally discharged. The jury acquitted defendant of assault with intent to commit murder, but found him guilty of the lesser offense of assault with intent to do great bodily harm less than murder.

*People v. Ingram*, No. 273086, 2007 WL 4245642, *1 (Mich. Ct. App. Dec. 4, 2007).

The petitioner was sentenced on February 14, 2006 to prison terms of 285 months to 40 years for armed robbery, 80 to 120 months for assault with intent to do great bodily harm, and two to four years for felonious assault, all of the foregoing to be served concurrently with one another and consecutively to three concurrent two-year prison terms for possession of a firearm during the commission of a felony.

The petitioner filed a direct appeal in the Michigan Court of Appeals raising these claims through counsel: (i) the trial court erred when it permitted the introduction of other-acts evidence; (ii) the trial court improperly sentenced the petitioner based upon facts not found by the jury beyond a reasonable doubt; and (iii) counsel was ineffective by failing to object to the sentences. The petitioner filed a *pro se* supplemental brief claiming that trial counsel was ineffective by admitting the petitioner's guilt to certain charges without the petitioner's consent. The Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Ingram*, No. 273086, 2007 WL 4245642 (Mich. Ct. App. Dec. 4, 2007).

-2-

The petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims asserted in the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Ingram,* 480 Mich. 1138, 746 N.W.2d 68 (2008).

On May 29, 2009, the petitioner filed a motion for relief from judgment in the trial court, raising claims that his arrest violated the Fourth Amendment and that his trial and appellate counsel were ineffective.  The trial court denied the motion and the Michigan Court of Appeals and Michigan Supreme Court denied leave to appeal the trial court's decision.  *People v. Ingram*, No. 302663 (Mich. Ct. App. Oct. 5, 2011); *People v. Ingram*, 491 Mich. 941, 815 N.W.2d 479 (2012).

While his appeal from the denial of his first motion for relief from judgment was pending, the petitioner filed a second motion for relief from judgment, raising a single claim addressing the alleged denial of his right to a public trial.  The trial court denied the motion on December 2, 2011. The Michigan Court of Appeals and Michigan Supreme Court again denied leave to appeal.  *People v. Ingram*, No. 310422 (Mich. Ct. App. Aug. 15, 2012); *People v. Ingram*, 493 Mich. 958, 828 N.W.2d 382 (2013).

On July 12, 2012, the petitioner filed the present petition for a writ of habeas corpus.  The Court stayed the petition pending resolution of the petitioner's appeals from the denial of his second motion for relief from judgment in the state courts.  After the petitioner concluded his state court appeals, he asked the Court to reinstate his habeas petition.  The Court reinstated the petition, vacated the stay, and ordered the respondent to file a response.  The petition raises these claims:

I.      THE TRIAL COURT ERRED BY ALLOWING THE ADMISSION OF SIMILAR ACTS EVIDENCE.

II.     TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO ADEQUATELY INVESTIGATE THE FACTS AND CONCEDING THE

-3-

PETITIONER'S GUILT ON FIVE OF THE SIX CHARGES WITHOUT THE PETITIONER'S EXPRESS CONSENT.

III.    A WARRANTLESS ARREST OF THE PETITIONER VIOLATED HIS RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE.

IV.    TRIAL AND APPELLATE COUNSEL WERE INEFFECTIVE BY FAILING TO PRESERVE THE ISSUE OF ILLEGAL ARREST AND ADMISSION OF IDENTIFICATION EVIDENCE.

V.    THE TRIAL COURT ERRED IN CLOSING THE COURTROOM TO THE PUBLIC.

Amended Pet. at 1-3.

The respondent filed an answer contesting the merits of the petition, and raising a procedural default defense for the prosecutorial misconduct claims.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's denial of those claims on that basis is an adequate and independent ground for the denial of relief under state law, which is not reviewable here. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address this procedural question. It is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  Because Ingram filed his petition after the AEDPA's effective date, its standard of review applies.  Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably

ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## A.

The petitioner argues first that the trial court violated his right to due process by admitting evidence that he committed other robberies on June 14, and July 1, 2005, weeks and days before the robbery charged in this case. The Michigan Court of Appeals rejected the claim under state evidentiary rules, finding that the evidence was offered "to establish defendant's intent and common scheme or plan in doing an act." *Ingram*, 2007 WL 4245642 at *2. The court noted that the jury was given a limiting instruction on the proper purpose for that evidence. The court then explained:

> Here, the pertinent charge for purposes of reviewing the trial court's decision is the assault with intent to commit murder charge, because the material issue for which the prosecutor offered the evidence was to rebut defendant's claim of an accidental shooting. An actual intent to kill is required to establish assault with intent to commit murder. *People v. Taylor*, 422 Mich. 554, 567; 375 N.W.2d 1 (1985). "An actor's intent may be inferred from all of the facts and circumstances." *People v. Fetterley*, 229 Mich. App 511, 517-518; 583 N.W.2d 199 (1998). Relevant factors are "the nature of the defendant's acts constituting the assault, the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made."

-6-

*Roberts v. People*, 19 Mich. 401, 416 (1870); *see also People v.. Brown*, 267 Mich. App 141, 149 n 5; 703 N.W.2d 230 (2005).

Whether defendant was engaged in intended conduct when he shot the victim at the Mug & Jug Wine Store was probative of his intent. And whether defendant engaged in similar conduct during the few weeks preceding the shooting was probative of whether he was acting pursuit to a plan, as well as the type of experience that he brought into the charged robbery. Evidence that defendant had prior experience in confronting individuals with a gun to commit a robbery before the shooting might negate an otherwise reasonable assumption that he was an inexperienced robber whose gun discharged accidentally while he was mishandling it, causing him to flee out the back door.

Therefore, the trial court did not abuse its discretion in finding that the evidence was relevant to defendant's intent and common scheme or plan in doing an act. Further, the trial court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under M.R.E. 403.

*Ibid.*

"[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other-acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no

"clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). *Id.* at 513. The petitioner has not shown that he is entitled to habeas relief on this claim.

B.

Next, the petitioner argues that trial counsel was ineffective by failing to investigate the facts, conceding his guilt at trial, and that trial and appellate counsel were ineffective by failing to raise and preserve his claim that his Fourth Amendment rights were violated by his warrantless arrest.

The standard for obtaining habeas corpus relief is "'difficult to meet.'" *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. ---, ---, 133 S. Ct. 1781, 1786 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'*s* deferential standard." *Ibid.*

A violation of the Sixth Amendment right to effective assistance of counsel is established when an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for

-8-

appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

The petitioner first argues that counsel was ineffective because he failed to investigate the facts of his case. That argument is based on the petitioner's belief that his trial attorney did not move to challenge his warrantless arrest on the ground that police lacked probable cause and the arrest was allegedly based upon an impermissibly suggestive lineup procedure. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

An "arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." *Ingram v. City of Columbus*, 185 F.3d 579, 592-93 (6th Cir. 1999). Probable cause supports an arrest if, at the time of arrest, the arresting officer had "reasonably trustworthy

information" that is sufficient to warrant a reasonable person to "conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008); *see also Lilly v. City of Erlanger*, No. 14-5069, 598 F. App'x 370, 375-76 (6th Cir. 2015) ("[A] determination of probable cause to arrest depends simply on whether, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed an offense.") (internal quotation marks and alterations omitted) ;*Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (holding that an "[a]rrest without a warrant does not violate the Fourth Amendment if probable cause exists").

In this case, officers with the Farmington Hills Police Department were conducting surveillance of the petitioner's residence based upon a tip from a confidential informant that the petitioner was involved in the party store robbery, when they were notified that a Macomb County robbery victim had identified the petitioner from a photographic lineup as one of the perpetrators. The St. Clair Shores Police Department requested the Farmington Hills police to arrest the petitioner. Farmington Hills police officers, who had seen the petitioner exit his home and enter the front passenger seat of a Ford Taurus, pursued the Taurus and arrested the petitioner. Based upon these facts, it was not unreasonable for the arresting officers to conclude that the petitioner had committed an offense.

The petitioner's challenge to the fairness of the photographic lineup does not change this analysis. Probable cause exists where an officer has knowledge that would warrant a "prudent man" to believe that an offense has been committed and the suspect committed it. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964). Here, the officers involved were advised that a robbery victim positively

-10-

identified the petitioner from a photographic array as the perpetrator. A prudent officer would believe this was sufficient to justify an arrest of the petitioner. Police officers are not expected to await judicial review of the fairness of a lineup before effecting an arrest based upon a lineup identification. *See Arizona v. Evans*, 514 U.S. 1, 15-16 (1995) (holding that a police officer "was acting objectively reasonably when he relied upon the police computer record," even though the outstanding warrant on which the officer arrested defendant was the result of a clerical error). The petitioner has not shown that he could have succeeded on his Fourth Amendment claim, and therefore he cannot show that his attorney was ineffective when he did not challenge the arrest.

The petitioner argues that his appellate attorney was ineffective by failing to raise these Fourth Amendment claims on direct review. It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and citations omitted).

The petitioner's complaints about trial counsel's handling of the Fourth Amendment claims have no merit, and there is no reasonable probability that, but for appellate counsel's failure to raise those claims, the petitioner would have prevailed on appeal. Therefore, appellate counsel was not ineffective by failing to raise the these claims on direct appeal. "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010), quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

-11-

Finally, the petitioner argues that trial counsel was ineffective when he conceded the petitioner's guilt at trial. He objects to this statement by defense counsel during closing argument: "You know we have a video that shows that clearly Mr. Ingram is in the store and this robbery went on. You can see all of that. That's one of the reasons why I've conceded to you that the armed robbery case is being made out." Tr., 1/31/06 at 33. The petitioner argues that counsel was ineffective because he failed to seek and obtain his consent before conceding guilt.

The Michigan Court of Appeals, applying the test for ineffective assistance of counsel articulated in *Strickland*, held that trial counsel's decision to concede the petitioner's guilt was reasonable trial strategy. The court of appeals correctly noted that an attorney is required to consult with his client regarding important tactical decisions, but rejected the petitioner's claim that counsel's concession that the petitioner committed certain acts was the functional equivalent of a guilty plea. *Ingram*, 2007 WL 4245642 at *4, *citing Florida v. Nixon*, 543 U.S. 175, 187-88 (2004). The court of appeals held that, in light of the substantial evidence against the petitioner, "defense counsel's strategy of admitting defendant's guilt on [the armed robbery and felonious assault charges] to improve defendant's chances for acquittal on the assault with intent to commit murder charge was not unsound." *Ibid.* The court of appeals further held that, given the admission of the petitioner's written confession to committing the armed robbery at trial, he failed to show any reasonable probability that the result of the trial would have been different without counsel's confession. *Ibid.*

The petitioner has not shown that the state court of appeals' assessment of his lawyer's trial strategy unreasonably applied *Strickland*. Trial counsel argued to the jury that the petitioner told the truth in his confession; that was a strategy for obtaining an acquittal on the assault with intent

-12-

to murder charge.  He argued that counsel admitted in his confession that he committed the robbery, but denied any intent to kill the victim.  Counsel reasoned that the petitioner was obviously being truthful by admitting to the robbery and that the jury therefore, also should find him truthful when he stated that the gun discharged accidentally.  And that strategy turned out to be successful: the petitioner was acquitted of the assault with intent to murder charge.  Counsel's admission in the face of the substantial evidence against the petitioner, including the petitioner's own confession, was reasonable and did not fall below an "objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  The Court cannot conclude that "there is a reasonable probability that," but for counsel's trial strategy, "the result of the proceeding would have been different."  *Strickland,* 466 U.S. at 694.

Because the state courts reasonably applied federal law when they rejected that petitioner's arguments, habeas relief must be denied on this claim.

## C.

Next, the petitioner argues that his rights under the Fourth Amendment were violated by the warrantless arrest.  It is well settled that *Stone v. Powell*, 428 U.S. 465 (1976), bars a Fourth Amendment claim on habeas review, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.* at 494.

The Sixth Circuit Court of Appeals employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

-13-

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (internal quotations omitted). "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). Because Michigan provides a procedural mechanism for raising a Fourth Amendment claim, the petitioner may only demonstrate entitlement to relief if he establishes that presentation of his claim was frustrated by a failure of that mechanism. He has not done so. The petitioner's failure to litigate his Fourth Amendment claim on the grounds raised in this petition on direct review does not reflect a failure of the state process. *See Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977) (holding that the defendant's failure to utilize state court corrective procedures to redress claimed Fourth Amendment violations did not render *Stone* inapplicable); *Williams v. Valenzuela*, No. 11-8461-AG, 2012 WL 6761722, *9 (C.D. Cal. Dec. 7, 2012) ("The fact that Petitioner and his counsel did not take advantage of [state court process for litigating search and seizure claims] is not important; the process was available to Petitioner and, therefore, his Fourth Amendment claim is not cognizable here."). Consequently, this claim is not cognizable.

### D.

Finally, the petitioner alleges that his Sixth Amendment right to a public trial was violated when the trial court closed the courtroom to the public during the testimony of prosecution witness John Parish. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right is applicable to the states through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 148-49 (1968).

-14-

"The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The public-trial guarantee was created to further that aim. *Ibid.* (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979). A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Ibid.* The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id.* at 49-50, n.9.

A closure does not violate the Sixth Amendment where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *Id.* at 48.

Before John Parish testified, the prosecutor requested outside the presence of the jury that the courtroom be closed during Parish's testimony because Parish and his father both had been receiving death threats based upon Parish's participation in the petitioner's case. In response, the petitioner's counsel cited the petitioner's right to a public trial, but recognized that there was concern that the petitioner's family members had made threats against Parish. The trial court decided to close the courtroom for Parish's testimony only.

The trial court identified the witness's safety as the overriding interest that justified a temporary closure of the courtroom. Courts have recognized that interest as sufficient to warrant closure. *Nolan v. Money*, 534 F. App'x 373, 380 (6th Cir. 2013). The closure here was no broader than necessary to achieve the goal. The courtroom was closed only for Parish's testimony despite the prosecution's request that the courtroom remain closed for co-defendant Kim Thomas's

testimony as well. And the trial court considered reasonable alternatives to complete closure. The court weighed the concerns presented by Parish's testimony versus Thomas's testimony. The court concluded that, although both may have been subjected to threats from the petitioner's family, the threats against Parish were far more compelling because he was a member of the general public and was not afforded any special protection by law enforcement personnel, even in light of his testimony and the threats against him. In contrast, Thomas was in the custody of the Michigan Department of Corrections and protected by deputies while at the courthouse to testify. Thomas, because he pleaded guilty to this same offense, would not be returning to the general public after his testimony, instead serving a term of imprisonment. The trial court therefore reopened the courtroom for Thomas's testimony. Additionally, the trial was transcribed so the public could learn what occurred while the courtroom was closed. *See Nolan,* 534 F. App'x at 380-81 (finding no violation of right to public trial based, in part, on the availability of a transcript from which the public could learn what occurred during the closure).

Finally, although the trial court did not make a lengthy on-the-record finding to support the closure, it is apparent from the record that the trial court credited Parish's concerns and the representations that he had received threats from family members, which caused him to be fearful. The trial court's decision to close the courtroom for Parish's testimony reasonably applied the factors articulated by the Supreme Court in *Waller v. Georgia.* The petitioner's request for habeas relief on this claim will be denied.

III.

The state courts reasonably applied federal law as established by the Supreme Court when addressing the petitioners' claims.  Therefore, the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 12, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 12, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

-17-